IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT ITTERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 5:08-CV-01266-LS |
| | ) | |
| FAMILY DOLLAR STORES, INC., | ) | |
| and FAMILY DOLLAR STORES OF | ) | |
| PENNSYLVANIA, INC. | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY
<u>JUDGMENT WITH RESPECT TO PLAINTIFF ALBERT ITTERLY</u>

I.    <u>INTRODUCTION</u>

Pursuant to Fed. R. Civ. P. 56 and the applicable Local Rules, defendants move for summary judgment on the only remaining count in plaintiff's complaint.[1]  Plaintiff Itterly alleges that during his employment as a Store Manager, he was misclassified as an exempt employee under the Pennsylvania Minimum Wage Act[2] ("PMWA").  He thus claims that he is entitled to unpaid overtime pay and other relief.

Based largely on his own deposition testimony, the undisputed evidence shows that Itterly satisfies the requirements of the PMWA's executive exemption.  Specifically, Itterly was paid a salary above the applicable threshold, his primary duty was management of his store, and he customarily and regularly directed the work of two or more full time employees.  Because

---

[1] Itterly's complaint, filed on March 14, 2008, alleged individual and collective claims under the Fair Labor Standards Act ("FLSA") and individual and class claims under the PMWA.  The MDL transferee court dismissed Itterly's claims under the FLSA and confirmed that the only remaining claims in this action are Itterly's individual and class claims under the PMWA.  *See* MDL Docket No. 634.

[2] The PMWA is interpreted in accord with the Fair Labor Standards Act ("FLSA"), and courts look to the FLSA and its applicable regulations for guidance.  *See* pp. 6-7, *infra*.

there are no genuine issues of material fact with respect to Itterly's claims, Family Dollar

requests that the Court grant summary judgment in its favor and dismiss Itterly's complaint in its

entirety.

Federal courts have not hesitated to grant summary judgment to employers in the retail

industry on the executive exemption, based on evidence that in some instances is less compelling

than the evidence here.  *See, e.g., Lovelady v. Allsup's Convenience Stores, Inc.,* 304 Fed. Appx.

301 (5th Cir. 2008); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir. 2007); *In

re Dollar Gen. Stores FLSA Litig*., 766 F. Supp.2d 631 (E.D.N.C. 2011); *Jones v. Va. Oil Co*., 69

Fed. Appx. 633 (4th Cir. 2003).

II.   FACTUAL BACKGROUND

    A.   Itterly's Family Dollar Employment

Family Dollar is a national retail chain that operates over 7,000 discount stores in 44

states.  *See* SOF Ex. B ¶ 3.[3]  Family Dollar offers low-cost, basic merchandise including

groceries, apparel, electronics, household items, and seasonal goods.  *Id*.  Itterly was hired by

Family Dollar in 2002 as a Store Manager, was promoted to District Manager, and then was

demoted to Store Manager in 2007.  SOF Ex. A. at 29, 53, 76-77.  From July 21 to November 24,

2007, Itterly was the Store Manager at Store 1802 in Allentown, Pennsylvania.  SOF ¶ 1; SOF

Ex. A, at 20-21, 29, 241; SOF Ex. B ¶ 5.  When Itterly became Store Manager of the Allentown

store, he received a salary of $930 per week, which he received for the remainder of the relevant

time period.  SOF ¶ 2; SOF Ex. B ¶ 5.  Of the hourly employees who worked under Itterly during

the relevant time period, the average hourly wage was $8.21.  SOF ¶ 3; SOF Ex. B at ¶ 10.  As

---

[3] The Declaration of Michelle DeBrocq is based upon DeBrocq's review of the documents provided during discovery.

Store Manager, Itterly also received a bonus of $904.75 in November 2007, while none of the non-exempt employees were eligible to receive a bonus.  SOF ¶ 4; SOF Ex. B at ¶¶ 5-6.

During the relevant time period as Store Manager of the Allentown store, Family Dollar's records reflect that Itterly managed at least 80 employee hours 100% of the time.  SOF ¶ 5; SOF Ex. B ¶ 9.  He suffered an injury in November 2007 and never returned to work; his employment ended in April 2008.  SOF ¶ 6; SOF Ex. A at 20-21, 406.

       B.    <u>Itterly's Duties As A Family Dollar Store Manager</u>

          1.    <u>Itterly's Primary Duty Was Managing The Store.</u>

As Store Manager, Itterly was the highest ranking employee in the store on a daily basis. In his post-Family Dollar resume, he explains that as a Family Dollar Store Manager, he "was responsible for the overall operation and profitability of my stores . . . ."  SOF ¶ 7; SOF Ex. C at p.1; SOF Ex. A at 25.

Itterly was responsible for many different tasks and duties as part of his job.  Specifically, Itterly was responsible for:  interviewing and hiring cashiers/stockers; providing recommendations regarding the hiring of Assistant Store Managers; completing hiring paperwork; training employees; ensuring that Family Dollar procedures were being followed; scheduling employees and handling vacation requests; supervising and directing employees' work; handling the bank deposits and other financial and sales paperwork; evaluating the work of his employees and recommending promotions; counseling and disciplining employees; planning and apportioning work among his employees; controlling the flow and distribution of merchandise; maintaining the security of the store and guarding against theft; and ensuring that the store stayed within the allocated payroll budget.  SOF ¶¶ 8; 10, 11, 12, 13, 14, 15, 16, 17, 18, 19; SOF Ex. A, at 131-33, 166-68, 193, 246-47, 249, 251, 257-58, 260, 271-73, 275-76, 289,

296-97, 300-01, 307-08, 316-18, 329-30, 332-33, 335-36, 338-40, 345, 352-57, 359-60, 362-65, 367-68, 370-73, 375-81, 384-85, 387-88, 397-401.

During the 18 weeks that he was a Store Manager during the relevant time period[4], Itterly was tasked with the difficult assignment of managing a store that was a "disaster."  SOF ¶ 20; SOF Ex. A at 249-50.  The store was not clean, products were not being shelved, it had serious problems with theft, seasonal displays were not set, and employees were not following proper procedures in terms of cycle counts and store recovery.  SOF ¶ 20; SOF Ex. A, at 249-55.  To further complicate matters, within a few days of Itterly taking over as Store Manager, all of the employees of the store quit because they did not want to listen to him.  SOF ¶ 21; SOF Ex. A at 244-45.  Thus, one of Itterly's first tasks was hiring an entirely new staff.  SOF ¶ 21; SOF Ex. A at 246-49, 289, 307-09.  In short, many of Itterly's duties during the relevant time period focused on bringing the store up to Family Dollar standards, preventing theft, and adequately staffing the store.

### 2.    Itterly Exercised Discretion

Itterly exercised discretion in several ways.  First, as discussed above, Itterly used discretion in hiring cashiers/stockers and providing recommendations as to the hiring of Assistant Store Managers.  SOF ¶ 8; SOF Ex. A. at 246-49, 289, 307-09, 335-36, 338-40.  He also used his judgment in recommending a promotion for one of his employees.  SOF Ex. A at 372-73, 375-76.  In terms of scheduling, while Family Dollar provided a model staff schedule with hours for his employees, Itterly adapted the hours on the schedule to deal with employees who were ill or on vacation, or when his payroll budget did not fit with the schedule. SOF ¶ 12;

---

[4] Itterly filed his complaint on March 14, 2008, which results in a potential statute of limitations period back to March 14, 2005.  However, Itterly only worked as a Store Manager during that time period from July 21, 2007 to November 24, 2007.

SOF Ex. A at 166-68, 271-73, 275-76.  In addition, as Store Manager, Itterly was responsible for assigning and apportioning work among his employees on a daily basis.  SOF ¶ 13; SOF Ex. A at 329-30, 352-53, 380-81.

C.    Itterly Concurrently Performed Management And Non-Exempt Duties

Itterly performed some non-managerial tasks as a Store Manager.  He would operate cash registers, unload freight and arrange merchandise on shelves, and clean the store.  SOF ¶ 32; SOF Ex. A. at 300-01, 320.  However, even while performing non-exempt tasks, Itterly was still responsible for running the store 100% of the time.  For example, he supervised employees who assisted in unloading freight.  SOF ¶ 34; SOF Ex. A. at 282-84, 300-01.  Itterly also monitored the security of his store and looked out for shoplifters and possible employee theft, even while unloading freight or stocking shelves.  SOF ¶ 35; SOF Ex. A. at 257-58, 260, 301.  In fact, Itterly stated that he did not delegate the responsibility to unload freight to someone else because he wanted to watch over the truck drivers and prevent theft; he explained that "it was a way of the manager still having control of that situation in the back . . . . "  SOF ¶ 34; SOF Ex. A at 300-01.

III.    ARGUMENT

A.    Summary Judgment Standard

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Whether an employee is properly classified as exempt is ultimately a legal question and courts routinely grant summary judgment in favor of employers when the facts demonstrate that an employee is exempt.  *Soehnle v. Hess Corp*., 399 Fed. Appx. 749, 751-52 (3d Cir. 2010) (affirming grant of summary judgment where plaintiff fell within FLSA exemption); *Jean-Louis*

*v. RGIS Inventory Specialists, LLC*, 2011 U.S. Dist. LEXIS 93424 (E.D. Pa. Aug. 22, 2011)

(granting summary judgment on PMWA claim); *see also In re Family Dollar FLSA Litig.,* 637

F.3d 508 (4th Cir. 2011) (Family Dollar store manager exempt).

      B.    <u>Itterly Qualifies As An Exempt Executive Under the PMWA</u>

      The PMWA requires that an employee receive overtime pay if he works more than 40

hours in a week.  43 Pa. Stat. Ann. § 333.104(c).  However, the statute exempts from this

requirement any employee employed "in a bona fide executive . . . capacity."  43 Pa Stat. Ann. §

333.105(a)(5).  The Pennsylvania Bureau of Labor Standards has promulgated a regulation that

defines employment in a bona fide executive capacity.  34 Pa. Code § 231.82.  This regulation

sets forth both a "short" and "long" test for determining whether an employee qualifies as an

exempt executive.  *Id*.  The short test is used for employees who are compensated on a salary

basis at a rate of at least $250 per week.  34 Pa. Code § 231.82(6).  As set forth below, it is

undisputed that Itterly earned a salary of more than $250 per week.  Thus, the short test applies

for determining whether plaintiff was properly classified as exempt.  Under the short test, an

employee qualifies as an executive if (1) his primary duty consists of the management of the

enterprise and (2) includes the customary and regular direction of the work of two or more other

employees.  *Id*.

      Since neither the PMWA nor the Pennsylvania regulations define "primary duty" or

"management," courts look to the FLSA and its implementing regulations for guidance.  *See*

*RGIS Inventory Specialists, LLC*, 2011 U.S. Dist. LEXIS 93424 at * 34-36; *King v. Dolgencorp,*

*Inc*., 2010 U.S. Dist. LEXIS 140302 at * 25-27 (M.D. Pa. May 6, 2010) (report and

recommendation adopted, 2010 U.S. Dist. LEXIS 143665 (M.D. Pa. June 17, 2010)).  The

relevant provisions of the FLSA and PMWA are "identical."  *Mudgett v. Univ. of Pittsburgh*

*Med. Ctr.*, 2010 U.S. Dist. LEXIS 44266 at * 7-9 (W.D. Pa. May 6, 2010); *see Goldman v. RadioShack Corp.*, 2006 U.S. Dist. LEXIS 2433 at * 3 (E.D. Pa. Jan. 24, 2006).

1.   <u>Family Dollar Satisfies The Salary Basis Test</u>

During the relevant time period, Family Dollar paid Itterly a salary of $930 per week. SOF ¶ 2; SOF Ex. B ¶ 5.  Thus, Family Dollar easily satisfies the salary basis test under the Pennsylvania regulation.  34 Pa. Code § 231.82(6).

2.   <u>Itterly's Primary Duty Was Management Of His Store</u>

The undisputed evidence proves that Itterly's primary duty was managing his store. Plaintiff was the highest paid and highest ranking employee in the store on a daily basis and he was ultimately responsible for the store's overall operation and profitability and ensuring that Family Dollar procedures were followed.  SOF ¶ 7; SOF Ex. C p.1; SOF Ex. A. at 251-54, 322-29.  It is clear that Itterly ran the store; as he testified, all of the employees quit shortly after he took over the Allentown store because they did not want to listen to him and did not want to run the store the way he wanted it run.  SOF ¶ 21; SOF Ex. A at 244-45.  And, when Itterly raised issues regarding payroll budget and scheduling with his District Managers, he was told that as Store Manager it was his job to "figure it out."  SOF ¶ 29; SOF Ex. A. at 277-78, 287-88.

The DOL regulations define primary duty as "the principal, main, major or most important duty that the employee performs" and that the determination of an employee's primary duty "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  The regulations set forth a non-exhaustive list of four factors to consider in the primary duty analysis:  (1) the relative importance of the exempt duties compared with other types of duties; (2) amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages of other employees for the kind of

nonexempt work performed by the employee.  *Id*.

          a.      <u>Itterly Performed Management Duties</u>

"Management" activities include, but are not limited to:

> [I]nterviewing, selecting and training of employees; setting and adjusting their
> rates of pay and hours of work; directing the work of employees; maintaining
> production or sales records for use in supervision or control; appraising
> employees' productivity and efficiency for the purpose of recommending
> promotions or other changes in status; handling employee complaints and
> grievances; disciplining employees; planning the work; determining the
> techniques to be used; apportioning the work among the employees; determining
> the type of materials, supplies, machinery, equipment or tools to be used or
> merchandise to be bought, stocked and sold; controlling the flow and distribution
> of materials or merchandise and supplies; providing for the safety and security of
> the employees or the property; planning and controlling the budget; and
> monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

        Itterly testified that he regularly performed most of these management duties as a Family

Dollar Store Manager:

- He interviewed potential employees, hired employees below the Assistant Store Manager level (cashiers/stockers) and provided recommendations regarding the hiring of Assistant Store Managers.  SOF ¶ 8; SOF Ex. A. at 193, 246-47, 249, 289, 296-97, 307-08, 335-36, 338-40, 345.

- He trained his employees regarding sales techniques and Family Dollar policies and procedures.  SOF ¶ 10; SOF Ex. A. at 131-33, 332-33, 335, 359-60.

- He assigned employees to a schedule, set their hours of work, and adjusted the schedule if employees were unavailable or if his payroll budget did not fit with the staff schedule.  SOF ¶ 12;SOF Ex. A. at 166-68, 271-73, 275-76

- He directed and supervised his employees' work, including ensuring that Family Dollar procedures were being followed.  SOF ¶ 11; SOF Ex. A. at 251, 260, 300-01, 329-30, 352-53, 380-81.

- He maintained and was responsible for certain sales and financial records.  SOF ¶ 14; SOF Ex. A. at 316-18, 387-88, 397-401.

- He evaluated the work of his employees and recommended promotions.  SOF ¶ 15; SOF Ex. A. at 372-73, 375-76, 376-81.

- He disciplined employees when necessary.  SOF ¶  16; SOF Ex. A. at 362-64, 367-68, 370-72.

- He planned and apportioned work among his employees.  SOF ¶ 13; SOF Ex. A. at 329-30, 352-53, 380-81.

- He controlled the flow and distribution of merchandise.  SOF ¶ 17; SOF Ex. A. at 375, 384-85.

- He was responsible for the safety of his employees and the security of the store.  SOF ¶ 19;  SOF Ex. A. at 257-58, 260, 300-01, 364-65, 375.

- He was responsible for controlling and staying within the allocated payroll budget.  SOF ¶ 18; SOF Ex. A. at 271-73, 275-76.

- He was responsible for monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork.  SOF ¶ 9; SOF Ex. A. at 353-357.

Thus, Itterly's own deposition testimony shows that he regularly performed many of the managerial activities that the regulations associate with exempt status.  *See generally Soehnle*, 399 Fed. Appx. at 750-52 (plaintiff performed management activities including supervision, scheduling, recruiting, hiring, and training); *Grace v. Family Dollar Stores, Inc.*, 2009 U.S. Dist. LEXIS 59154 at * 17-18 (W.D.N.C. July 9, 2009) (plaintiff performed many of listed management activities).

        b.    Itterly's Managerial Duties Were More Important Than Other Duties That He Performed

Family Dollar stores do not manage themselves and the undisputed evidence shows that Itterly was the person actually managing the store on a daily basis.  For this reason, his exempt duties were more important than any non-exempt duties he performed.  *See In re Family Dollar FLSA Litig.* 637 F.3d at 517 (exempt duties more important since *"[t]here was no one else at the site to direct these actions"* (emphasis in original); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("someone had to manage the park" and management of park fell to on-site managers).

Itterly was responsible for a store that was a "disaster" and as a result he had to immediately implement measures to control shrink, ensure that merchandise was reaching the shelves, and ensure that Family Dollar policies were being followed.  SOF ¶ 20; SOF Ex. A. at

249-57.  Itterly was particularly vigilant in controlling shrink, not just by watching for shoplifters, but also by preventing theft by Family Dollar employees by monitoring the security camera and the delivery of freight by truck drivers.  SOF ¶ 35; SOF Ex. A at 260, 300-01, 364-65.  Moreover, since all of the store's employees quit within days of when Itterly started, Itterly was faced with the task of hiring enough workers to adequately staff the store.  SOF ¶ 21; SOF Ex. A at 244-49, 289, 296-97.  The selection of employees was particularly critical, as Itterly recognized the need to have reliable employees who would follow instructions and show up for work when they were scheduled.  SOF ¶ 22; SOF Ex. A. at 244-45, 284-86, 296-99.  As in *Grace*, he was "in charge of a separate retail store, seeking to make it profitable" and "[w]hether [Itterly] was collecting cash, filling out paperwork, sweeping the floor, stocking shelves, hearing the complaint of a customer, working with employees on their schedules, or running a cash register, [he] was fulfilling [his] task of running the store."  637 F.3d at 515, 517; *see* SOF ¶ 7; SOF Ex. C p. 1 ("I was responsible for the overall operation and profitability of my stores").

Itterly's decision to assist in unloading and putting out merchandise, running cash registers, and cleaning the store certainly helped the store run more smoothly.  But without his management duties such as interviewing and hiring, store security, bank deposits, financial and sales paperwork, scheduling, and overall supervision and direction of his employees, the store could not have functioned.  *See Guthrie*, 722 F.2d at 1145 (safety and supervisory functions essential to operation); *In re Family Dollar FLSA Litig.* 637 F.3d at 517; *Jones*, 69 Fed. Appx. at 638 (duties such as ordering, hiring, training, scheduling workers and completing paperwork were critical to the success of the store); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 505-06 (6th Cir. 2007) (managerial duties more important because store could not function without the manager performing essential tasks such as training and scheduling); *Donovan v.*

*Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982) (*Burger King II*) (same).  In sum, Itterly's

managerial activities were more important than his other tasks, because they were essential to the

successful operation of his store.

> c.    Itterly Cannot Defeat The Exemption By Claiming He Spent
>        Majority Of Time Performing Non-Exempt Work

The DOL regulations set forth a general rule of thumb that an employee who spends

more than 50 percent of his or her time performing managerial work will typically satisfy the

primary duty requirement.  29 C.F.R. § 541.700(b).  However, the regulations highlight that

"time alone . . . is not the sole test" and that exempt executives are not *required* to perform

exempt work more than 50 percent of their time if other factors support the conclusion that

management is their primary duty.  *Id.*; *see also Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d

1141, 1144-45 (3d Cir. 1983); *In re Family Dollar FLSA Litig.* 637 F.3d at 515; *McClain v.

McDonald's Corp.*, 2007 U.S. Dist. LEXIS 5461, at * 31-35 (E.D Pa. Jan. 25, 2007) (plaintiff

exempt executive even though spent more than 50% of time on nonexempt work).

The Third Circuit has explicitly recognized that the primary duty test is a "qualitative"

not "quantitative" matter.  *Soehnle*, 399 Fed. Appx. at 751-52.  In *Soehnle*, the court affirmed

summary judgment, ruling that plaintiff store manager was an exempt executive, even though

she testified that she spent 85% of her time operating the cash register and only approximately

one half hour to one hour per day on management activities.  *Id.*  The Third Circuit recognized

that primary duty "does not connote the most time-intensive of an employee's functions but

instead refers to the 'principal, main, major or most important' duty performed by the employee,

regardless of how much time she devotes to it."  *Id.* at 751.  The court concluded that, because

plaintiff was the sole manager, was held accountable for profit and loss, was subject to minimal

supervision, was fully responsible for the supervision of her employees, and earned substantially

more than the nonexempt employees, she qualified as an exempt executive under the qualitative test.  *Id*. at 751-52.

Similarly, in *In re Family Dollar FLSA Litig*. the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law."  637 F.3d at 515.  As a result, "it is misleading simply to add up the time [plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that [plaintiff] was merely a clerk and not a manager."  *Id*. at 516.  The Fourth Circuit concluded that Grace "performed these [nonexempt] tasks in the context of her overall responsibility to see that the store operated successfully and profitably."  *Id*.  The court explained:

> Grace was in charge of a separate retail store, seeking to make it
> profitable.  While she catalogs the nonmanagerial jobs that she had
> to do, claiming that they occupied most of her time, she does so
> without recognizing that during 100% of the time, even while
> doing those jobs, she was also the person responsible for running
> the store.  Indeed, there was no one else to do so, and it cannot be
> rationally assumed, nor does the record support a claim, that the
> store went without management 99% of the time.  Grace also fails
> to acknowledge the importance of performing nonmanagerial tasks
> in a manner that could make the store profitable, the goal of her
> managerial responsibility.

*Id*. at 515.  Thus, the Fourth Circuit affirmed summary judgment, explaining that Grace "was performing management duties whenever she was in the store, even though she also devoted most of her time to doing the mundane physical activities necessary for its successful operation."  *Id*. at 517.

The federal regulations provide a specific example that is instructive:

> [A]ssistant managers in a retail establishment who perform exempt executive
> work such as supervising and directing the work of other employees, ordering
> merchandise, managing the budget and authorizing payment of bills may have
> management as their primary duty even if the assistant managers spend more than
> 50 percent of the time performing nonexempt work such as running the cash

register.

29 C.F.R. § 541.700(c).

Similarly, the regulations also specifically address the concept of concurrent duties.  29 C.F.R. § 541.106.  This section states that "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met."  *Id.*  An exempt executive typically makes the decision about when to perform nonexempt duties and remains responsible for the business operations under their management while they perform the nonexempt work, as opposed to a nonexempt employee who is directed by a supervisor to perform the nonexempt work and usually performs it for a defined time period.  *Id.*  As a specific example, an assistant manager in a retail establishment may perform tasks including serving customers, stocking shelves and cleaning the establishment without losing the exemption.  *See* 29 C.F.R. § 541.106(b).[5]

Courts have routinely granted summary judgment to employers even where retail managers spend the majority of their time performing non-managerial work.  *See, e.g., Guthrie,* 722 F.2d at 1145 (to the extent that managerial functions are carried out simultaneously with the performance of nonexempt work, these duties are managerial); *In re Family Dollar FLSA Litig.* 637 F.3d at 516 (same); *Jones v. Virginia Oil Co., Inc.,* 69 Fed. Appx. at 637 (manager who spent 75 to 80 percent of her time carrying out nonexempt tasks such as cooking, stocking shelves, and cleaning was exempt, because she simultaneously performed management tasks such as supervising employees and handling customer complaints); *Thomas,* 506 F.3d at 504-09 (6th Cir. 2007); *Moore v. Tractor Supply Co.,* 352 F.Supp.2d 1268 (S.D.Fla. 2004) (store

---

[5]  The regulations also provide that work which is "directly and closely related" to exempt work also qualifies as exempt, including recordkeeping, spot checking employees' work, and maintaining the flow of merchandise.  29 C.F.R. § 541.703.

manager exempt executive even though spent 95 percent of his time performing nonexempt tasks).

Itterly was ultimately responsible for the overall management of his store at all times. SOF ¶ 7; SOF Ex. C p. 1; SOF Ex. A. at 244-45, 251-54, 322-30.  Thus, he "remain[ed] responsible for the success or failure of the business operations under [his] management while performing the nonexempt work."  29 C.F.R. § 541.106.  In other words, Itterly performed his nonexempt tasks in the context of his overall responsibility to ensure that the store was profitable.  *Soehnle*, 399 Fed. Appx. at 751-52; *In re Family Dollar FLSA Litig.*, 637 F.3d at 516.

He also performed his non-managerial work concurrently with his exempt managerial work.  For example, Itterly monitored the security of his store and watched for shoplifters and possible theft by employees, even while unloading freight or stocking shelves.  SOF ¶ 35; SOF Ex. A. at 257-58, 260, 301.  He decided what tasks to perform himself and what tasks to delegate.  SOF ¶¶ 32, 33, 34; SOF Ex. A at 300-01, 329-30.  In sum, Itterly had a choice of which duties to perform, in contrast to the nonexempt employees who do not have such discretion and simply performed the tasks they were assigned.

Thus, while Itterly will likely argue that management was not his primary duty because he claims to have spent the majority of his time dealing with freight, running a cash register, and cleaning the store, the applicable authority establish that performance of these duties, in conjunction with his overall supervision and management of the store, is not contrary to application of the exemption.

> d.    Itterly Was Relatively Free From Direct Supervision In Managing His Store

Itterly's District Managers did not work in his store and were not present in the store on a daily basis.  At the Allentown store, Itterly initially had two District Managers from New York

who temporarily oversaw his district.  SOF ¶ 25; SOF Ex. A. at 242-43.  In August 2007, Jeff

Van Valkenburgh took over as District Manager and served in that role for the remainder of the

relevant time period.  SOF ¶ 25; SOF Ex. A at 260-61.  Van Valkenburgh was responsible for

approximately 19 stores in Pennsylvania, which spanned 596 miles.  SOF ¶ 27; SOF Ex. B. ¶ 8.

Therefore, unlike a supervisor who worked in the same store or who had a limited territory,

Itterly's District Managers could not possibly be present at his store very often.  Indeed, Itterly

testified that the temporary District Managers were in his store about once every three weeks.

SOF ¶ 26; SOF Ex. A at 261.  Similarly, Itterly confirmed that Van Valkenburgh visited his store

about one or two times per week at the beginning, but then visited about once per week after that.

SOF ¶ 28; SOF Ex. A. at 261-62.  This undisputed evidence establishes that Itterly was relatively

free from direct supervision.  *See Guthrie*, 722 F.2d at 1146; *RGIS Inventory Specialists*, 2011

U.S. Dist. LEXIS 93424 at * 36 (plaintiff was exempt executive where she was most senior

employee at job site and therefore generally free from direct supervision).

Though Itterly was also in contact with Van Valkenburgh by telephone and e-mail, Itterly

does not allege that Van Valkenburgh constantly was looking over his shoulder.  On the

contrary, Itterly testified that when he raised payroll budget and scheduling issues with Van

Valkenburgh or the previous temporary District Managers, he was told that as Store Manager, it

was his job to "figure it out."  SOF ¶ 29; SOF Ex. Aat 277-78, 287-88.

In *In re Family Dollar FLSA Litig*. the Fourth Circuit held that plaintiff was relatively

free from supervision, despite her being subject to company procedures and policies, as this type

of supervision "was not uncharacteristic for any retail operation."  637 F.3d at 517.  The court

noted that, as with Itterly, the plaintiff's District Manager was responsible for several stores,

which did not permit him to micro-manage all of these stores.  *Id*.  Similarly, numerous other

courts have held that employees were relatively free from supervision where the exempt

executive was subject to substantially greater oversight than Itterly.  In *Thomas*, the store

manager was supervised by a district manager who visited each store once or twice per week and

communicated frequently by telephone and e-mail.  506 F.3d at 499, 507.  The court also noted

that "[i]n addition to stringent managerial oversight, [the company] has also adopted detailed

company policies and standardized operating procedures, as an additional means of fostering

consistency throughout its multi-store organization."  *Id*.  Nonetheless, the court affirmed

summary judgment for the employer, ruling that the plaintiff was relatively free from

supervision, since the factor "does not demand complete freedom from supervision."  *Id.*  The

court explained that plaintiff worked without a supervisor looking over her shoulder and that

"frequent, even daily exchange of e-mail and phone communications with her district manager"

did not equate to exacting supervision.  *Id*. at 507-08.

Similarly, in *Murray v. Stuckey's, Inc.,* 939 F.2d 614, 619 (8th Cir. 1991), that regional

managers visited and actively supervised the store managers did not defeat the exemption.  And

Stuckey's standardized methods for its stores did not destroy the exemption.  As *Murray*

recognized:

> [L]ike most modern retail chains, [Stuckey's] prescribed and
> standardized many aspects of store operations.  It is also true that
> the regional managers actively supervised the store managers,
> traveling to each store from time to time and communicating by
> phone with store managers at least weekly to monitor compliance
> with Stuckey's standardized methods of operations.  However, we
> do not believe that the local store manager's job is any less
> managerial for FLSA purposes simply because he or she has an
> active regional boss.  Like other courts that have considered the
> question, we believe that the manager of a local store in a modern
> multi-store organization has management as his or her primary
> duty even though the discretion usually associated with
> management may be limited by the company's desire for
> standardization and uniformity.

939 F.2d at 619; *see Jones v. Virginia Oil, Inc.*, 69 Fed. Appx. at 635-38 (employee was relatively free from supervision even though district manager in store one to four times per week); *Baldwin*, 266 F.3d at 1115 (managers relatively free from supervision even though they had to adhere to company policies, record completed tasks on checklists, and were subject to performance reviews conducted through a monthly inspection); *Ward v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 119272 at * 32-33 (W.D.N.C. Oct. 14, 2011) (Family Dollar Store Manager was relatively free from supervision where District Manager visited once per week). Because Itterly did not have direct supervision in his store on a day-to-day basis and his District Manager was responsible for multiple stores in a large territory, he was relatively free from direct supervision.

          e.        Itterly Earned Significantly More Than Non-Exempt
                   <u>Store Employees</u>

As Store Manager, Itterly was the highest paid employee at the Allentown store.  SOF Ex. B ¶ 5.  During the relevant time period, Itterly received a salary of $930 per week.  SOF ¶ 2; SOF Ex. B. ¶ 5.  He also received a bonus of $904.75 during the relevant time period, whereas none of the nonexempt workers were eligible for a bonus.  SOF ¶ 4;SOF Ex. B ¶ 6.

Itterly testified that he typically worked between 60 and 80 hours per week, and Family Dollar's records confirm that during the relevant time period, Itterly worked an average of 63.5 hours per week.  Ex. A. at 267-68; SOF Ex. B ¶ 7.  Even setting aside his bonus payment, this results in an average hourly wage of $14.65 ($930/63.5 = $14.65).  In comparison, the nonexempt workers working at Itterly's store, even using the highest hourly wage for those employees whose wages changed over time, received an average hourly wage of $8.21 per hour. SOF ¶ 3; SOF Ex. B ¶ 10.  This undisputed evidence shows a significant difference in wages between Itterly and his nonexempt employees, which further supports the conclusion that Itterly

qualifies as an exempt executive. *See In re Family Dollar FLSA Litig.* 637 F.3d at 517-18; *Jones*, 69 Fed. Appx. at 638-39 (plaintiff made $165 more per week than average hourly worker); *Thomas*, 506 F.3d at 508-09 (plaintiff's salary per hour of $10.44 was significantly more than typical hourly wage of $7.00 paid to nonexempt workers); *Ward*, 2011 U.S. Dist. LEXIS 119272 at * 34-36 (average salary between $10.60 and $14.81 per hour significantly more than hourly wage of $6.93 for nonexempt workers); *Gonzalez v. Dolgencorp, Inc., et al.*, 2011 U.S. Dist. LEXIS 137924 at * 22-25 (W.D. Mich. Dec. 1, 2011).

Second, Itterly was indisputably a "profit center," in that he had the ability to influence the amount of his compensation. *See In re Family Dollar FLSA Litig.* 637 F.3d at 517-18. Itterly confirms in his resume that he was responsible for the overall profitability of his store. *See* SOF Ex. C p. 1. As Store Manager, Itterly was expected to increase sales, reduce shrink, and stay within his allocated budget. SOF ¶ 18; SOF Ex. A. at 253-60, 271-73, 275-76. Based upon the store's profitability, Itterly received a bonus for which nonexempt employees were not eligible. SOF ¶ 4. Thus, unlike the hourly workers in his store, he also had the ability to directly influence his own total compensation.

    f.    Itterly Frequently Exercised Discretion In Performing
His Store Manager Duties

While not an explicit factor in the primary duty analysis, the fact that Itterly exercised significant day-to-day discretion in his work as Store Manager bolsters the conclusion that management was his primary duty. As previously discussed, Itterly had the discretion to hire all employees below the Assistant Store Manager level; he provided recommendations as to the hiring of Assistant Store Managers; he provided recommendations as to the promotion of employees; he had discretion in terms of assigning employees to the schedule and deciding how to adjust that schedule when necessary; he disciplined employees; and he planned and assigned

work among himself and his employees.  As Itterly explained, he was expected to "figure it out" in terms of scheduling and other issues, and was told by his District Manager "[t]hat's why you're the store manager, and that's what I pay you for."  SOF Ex. A. at 277-78.  Itterly further confirmed that he had the discretion to mark down damaged or nearly outdated items.  SOF ¶ 31; SOF Ex. A at 142-47.  In sum, on a daily basis, Itterly exercised discretion.  *See In re Family Dollar FLSA Litig.* 637 F.3d at 517 (virtually every day-to-day task "involved judgment and discretion").

The fact that Family Dollar maintains certain policies and procedures does not mean that Itterly failed to exercise discretion.  *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (most if not all nationwide companies with multiple outlets establish standardized procedures and policies, which may circumscribe but  does not eliminate the discretion of the on-site manager of an isolated store who is responsible for day-to-day operations); *Thomas*, 506 F.3d at 507 (same).

In short, an analysis of the character of Itterly's job as a whole and each of the factors set forth by the DOL regulations reveals that Itterly's primary duty was managing his Family Dollar store.  *See Soehnle*, 399 Fed. Appx. at 750-52; *In re Family Dollar FLSA Litig.* 637 F.3d at 518; *see also Ward*, 2011 U.S. Dist. LEXIS 119272 at * 24-38; *Grace*, 2011 U.S. Dist. LEXIS 119522 at * 23-33.

> 3.    Itterly Customarily And Regularly Directed The Work Of Two Or More Employees

Finally, the regulations require that an employee customarily and regularly direct the work of two or more other employees to qualify as an executive.  34 Pa. Code § 231.82(6).  The DOL regulations provide that the employee must direct the work of "two full-time employees or their equivalent," meaning that an exempt executive may direct two other full-time employees,

one full-time employee and two half-time employees, or four half-time employees.  29 C.F.R. §

541.104.  The regulations define "customarily and regularly" to mean "a frequency that must be

greater than occasional but . . . be less than constant."  29 C.F.R. § 541.701.  As a general rule of

thumb, the DOL has adopted an "80-hour rule" which requires an exempt executive to direct a

total of 80 employee-hours of work each week.[6]  Itterly regularly supervised at least two

employees.  SOF ¶ 5; SOF Ex. A. at 244, 247, 309-10.  In addition, Family Dollar's records

show that during the relevant time period, he directed at least 80 employee-hours of work each

week *100 percent* of the time he was a Store Manager.  SOF ¶ 5; SOF Ex. B ¶ 9.  Thus, Itterly

fully satisfies this final element of the executive exemption.

IV.    <u>CONCLUSION</u>

        The undisputed evidence proves that Itterly satisfies all the requirements for the executive

exemption as a matter of law.

---

[6]*See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,135 (Apr. 23, 2004).  Family Dollar does not mean to suggest that the 80-hour rule of thumb provides the appropriate means by which to analyze the issue; nevertheless, as set forth above, Itterly satisfies this test.

Dated:  August 10, 2012                    Respectfully submitted,

                                           */s/ John A. Ybarra*
                                           John A. Ybarra
                                           Shanthi V. Gaur
                                           LITTLER MENDELSON, P.C.
                                           321 N. Clark Street, Suite 1000
                                           Chicago, Illinois  60654
                                           Tel:  312.372.5520
                                           Fax:  312.372.7880
                                           Email: jybarra@littler.com
                                                   sgaur@littler.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I filed the foregoing *Defendants' Motion for Summary Judgment and Memorandum In Support Of Its Motion For Summary Judgment With Respect To Plaintiff Albert Itterly* via the court's CM/ECF system, which served a Notice of Electronic filing upon the following registered users:

Peter Winebrake
R. Andrew Santillo
THE WINEBRAKE LAW FIRM. LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Ph:  (215) 884-2491

<u>*/s/ John A. Ybarra*</u>
John A. Ybarra
LITTLER MENDELSON, P.C.
321 N. Clark Street
Suite 1000
Chicago, Illinois  60654
Tel:  312.372.5520
Fax:  312.372.7880

Firmwide:113720476.1 053439.1097