IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT ITTERLY, | ) |
|       Plaintiff, | ) |
| v. | ) No.: 5:08-CV-01266-LS |
| FAMILY DOLLAR STORES, INC., and FAMILY DOLLAR STORES OF PENNSYLVANIA, INC. | ) |
|       Defendants. | ) |

STATEMENT OF MATERIAL FACTS SUBMITTED BY DEFENDANTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to this Court's Standing Orders, Defendants Family Dollar Stores Inc. and Family Dollar Stores of Pennsylvania Inc. ("Family Dollar") submit this Statement of Material Facts in Support of their Motion for Summary Judgment:

1. From July 21 to November 24, 2007, Plaintiff Albert Itterly was the Store Manager at Family Dollar Store 1802 in Allentown, Pennsylvania. Deposition transcript of Albert Itterly at 20-21, 29, 241 ("Itterly Dep.") (Ex. A); *See* Declaration of Michelle DeBrocq ¶ 5 ("DeBrocq Decl.") (Ex. B)[1].

2. When Itterly became Store Manager of the Allentown store, he received a salary of $930 per week, which he received for the remainder of the relevant time period. DeBrocq Decl. ¶ 5.

3. Of the hourly employees who worked under Itterly during the relevant time period, the average hourly wage was $8.21. DeBrocq Decl. at ¶ 10.

---

[1] The Declaration of Michelle DeBrocq is based upon Ms. DeBrocq's review of the documents provided during discovery.

4. As Store Manager, Itterly also received a bonus of $904.75 in November 2007, while none of the non-exempt employees were eligible to receive a bonus. DeBrocq Decl. at ¶¶ 5-6.

5. During the relevant time period as Store Manager of the Allentown store, Family Dollar's records reflect that Itterly managed at least 80 employee hours 100% of the time. DeBrocq Decl. ¶ 9.

6. Itterly's employment with Family Dollar ended in April 2008. Itterly Dep. at 20-21, 406.

7. In his post-Family Dollar resume, Itterly states that as a Family Dollar Store Manager, he "was responsible for the overall operation and profitability of my stores . . . ." Confidential Resume of Albert Itterly at p.1 ("Itterly Resume") (Ex. C); Itterly Dep. at 25.

8. Itterly was responsible for interviewing and hiring cashiers/stockers and provided recommendations regarding the hiring of Assistant Store Managers. Itterly Dep. at 193, 246-47, 249, 289, 296-97, 307-08, 335-36, 338-40, 345.

9. Itterly was responsible for monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork. Itterly Dep. at 353-357.

10. Itterly trained employees regarding sales techniques and Family Dollar policies and procedures. Itterly Dep. at 131-33, 331-335, 359-60.

11. Itterly directed and supervised employees' work, including ensuring that Family Dollar procedures were being followed. Itterly Dep. at 251, 260, 300-01, 329-30, 352-53, 380-81.

12. Itterly assigned employees to a schedule and set their hours of work, including having to adjust the schedule if employees were ill or on vacation, or if his payroll budget did not fit with the staff schedule.  Itterly Dep. at 166-68, 271-73, 275-76.

13. Itterly planned and apportioned work among employees.  Itterly Dep. at 329-30, 352-53, 380-81.

14. Itterly was responsible for handling the bank deposits and other financial and sales records.  Itterly Dep. at 316-320, 387-390, 397-401.

15. Itterly evaluated the work of employees and recommended promotions.  Itterly Dep. at 372-73, 375-76, 376-81.

16. Itterly was responsible for counseling and disciplining employees when necessary. Itterly Dep. at 362-64, 367-68, 370-72.

17. Itterly's duties included controlling the flow and distribution of merchandise. Itterly Dep. at 375, 384-85.

18. Itterly was responsible for controlling and staying within the allocated payroll budget.  Itterly Dep. at 271-73, 275-76.

19. Itterly was responsible for maintaining the safety of employees, the security of the store and guarding against theft. Itterly Dep. at 257-58, 260, 300-01, 364-65, 375.

20. When Itterly became a Store Manager during the relevant time period he was tasked with managing a store that was a "disaster."  Itterly Dep. at 249-50.  The store was not clean, products were not being shelved, it had serious problems with theft, seasonal displays were not set, and employees were not following proper procedures in terms of cycle counts and store recovery.  Itterly Dep. at 249-55.

21. Within a few days of Itterly taking over as Store Manager, all of the employees of the store quit because they did not want to listen to him. Itterly Dep. at 244-45. Thus, one of Itterly's first tasks was hiring an entirely new staff. Itterly Dep. at 246-49, 289, 307-09.

22. Itterly recognized that the selection of employees who were reliable and who would follow instructions and show up for work when scheduled was critical. Itterly Dep. at 244-45, 284-86, 296-99.

23. As Store Manager, Itterly was responsible for assigning and apportioning work among employees on a daily basis. Itterly Dep. at 329-30, 352-53, 380-81.

24. Itterly was required to use his discretion and judgment on a daily basis as Store Manager also because his District Managers did not work in his store and were not in his store on a daily basis. Itterly Dep. at 260-62.

25. Itterly testified that when he first took over the Allentown store, a team of two temporary District Managers from New York oversaw his territory. Then in late August 2007, Jeff Van Valkenburgh took over as District Manager and served in that role for the remainder of the relevant time period. Itterly Dep. at 242-43, 260-61.

26. Itterly testified that the temporary District Managers were only in his store about once every three weeks. Itterly Dep. at 261.

27. Family Dollar records show that Van Valkenburgh was responsible for approximately 19 stores throughout Pennsylvania, spanning a territory of approximately 596 miles. DeBrocq Decl. ¶ 8.

28. Van Valkenburgh visited Itterly's store about one or two times per week at the beginning, but then visited about once per week after that. Itterly Dep. at 261-62.

29. When Itterly raised issues regarding payroll budget and scheduling with his District Managers, he was told that as a Store Manager it was his job to "figure it out." Itterly Dep. at 277-78, 287-88.

30. Itterly used discretion in hiring cashiers/stockers and providing recommendations as to the hiring of Assistant Store Managers. Itterly Dep. at 246-49, 289, 307-09, 335-36, 338-40.

31. Itterly also had the discretion to mark down damaged or nearly outdated items. Itterly Dep. at 142-47.

32. Itterly performed some non-managerial tasks as a Store Manager. He would operate cash registers, unload freight and arrange merchandise on shelves, and clean the store. Itterly Dep. at 300-01, 320.

33. Itterly supervised employees who assisted in unloading freight while he performed non-exempt tasks. Itterly Dep. at 282-84, 300-01.

34. Itterly did not delegate the responsibility to unload freight to someone else because he wanted to watch over the truck drivers and prevent theft; he explained that "it was a way of the manager still having control of that situation in the back . . . ." Itterly Dep. at 300-01.

35. Itterly also monitored the security of the store and looked out for shoplifters and possible employee theft, even while unloading freight or stocking shelves. Itterly Dep. at 257-58, 260, 301.

                Respectfully submitted,

                */s/ John A. Ybarra*
                John A. Ybarra
                Shanthi V. Gaur
                LITTLER MENDELSON, P.C.
                321 N. Clark Street, Suite 1000
                Chicago, Illinois  60654
                Tel:  312.372.5520
                Fax:  312.372.7880
                Email: jybarra@littler.com
                        sgaur@littler.com

**Exhibit List:**
A Deposition transcript of Albert Itterly
B Declaration of Michelle DeBrocq
C Confidential Resume of Albert Itterly

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing *Statement of Material Facts* via the court's CM/ECF system, which served a Notice of Electronic filing upon the following registered users:

Peter Winebrake
R. Andrew Santillo
THE WINEBRAKE LAW FIRM, LLC
Twining Office Center, Suite 114
715 Twining Road
Dresher, PA 19025
pwinebrake@winebrakelaw.com


Dated: August 10, 2012


*/s/ John A. Ybarra*
John A. Ybarra
LITTLER MENDELSON, P.C.
321 N. Clark Street
Suite 1000
Chicago, Illinois  60654
Tel:  312.372.5520
Fax:  312.372.7880

Firmwide:113704267.1 053439.1083