IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT ITTERLY, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) No.: 5:08-CV-01266-LS |
| | ) |
| FAMILY DOLLAR STORES, INC. | ) |
| and FAMILY DOLLAR STORES OF | ) |
| PENNSYLVANIA, INC. | ) |
| | ) |
| Defendants. | ) |

DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
<u>WITH RESPECT TO PLAINTIFF ALBERT ITTERLY</u>

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................... 1

II. PLAINTIFF MISREPRESENTS THE RECORD ........................................ 1

III. MANAGEMENT WAS ITTERLY'S PRIMARY DUTY ............................. 4

    A. Itterly's Most Important Duties Were Managerial ..................................... 4

    B. Itterly Performed Exempt And Non-Exempt Work Concurrently ............. 7

    C. Itterly Was Relatively Free From Supervision ........................................... 8

    D. Itterly Earned Substantially More Than His Subordinates ...................... 10

IV. ITTERLY SUPERVISED TWO FULL-TIME EQUIVALENTS ................. 11

I. INTRODUCTION

Family Dollar is entitled to summary judgment because plaintiff Itterly has failed to establish any genuine material factual dispute regarding his status as an exempt executive under the Pennsylvania Minimum Wage Act. Itterly concedes that he earned a salary well in excess of the minimum amount, but argues that (1) management was not his primary duty and (2) he did not supervise two or more employees. In making these arguments, Itterly both ignores and misrepresents his deposition testimony—just as he accuses defendants of doing—and manufactures disputed issues of fact where none exist.

Plaintiff fails to acknowledge the significant management duties that he did perform, including managing store security, scheduling, evaluating personnel, and interviewing candidates and hiring. Nor can Itterly defeat the exemption through his insistence that he spent much of his day doing physical work, as the undisputed facts show that he performed such work concurrently with his managerial duties.

II. PLAINTIFF MISREPRESENTS THE RECORD

Itterly also argues that Family Dollar fails to prove that he customarily and regularly directed the work of two or more employees because plaintiff spent time working alone in the store. This argument is belied by Family Dollar's business records showing that his subordinates worked at least 80 hours per week and also is specifically rejected in the case law. Itterly argues that Family Dollar failed to

1

provide evidentiary support for its factual assertions. This is untrue. For example, Itterly contests Family Dollar's assertion that "[he] trained employees regarding ... Family Dollar policies and procedures." Plaintiff's Response to Defendants' Statement of Facts in Support of Summary Judgment (ECF No. 26) ("PRSF") ¶ 10. Specifically, Itterly states that the supporting citation "merely explains that all store employees are 'responsible for knowing the policies.'" *Id.* ¶ 10(a). This is false. Itterly testified as follows:

> Q: []As a store manager, you were also responsible for making sure that the various store policies and procedures were known to your employees, right?
> . . .
> A: We were all responsible for knowing the policies.
> . . .
> Q: []And as a training manager, as you mentioned, you knew the policies fairly well I'm assuming?
>
> A: Yes.
>
> Q: And did you train your employees on those policies?
>
> A: Yes.

Deposition of Albert Itterly, Oct. 3, 2008 ("Tr.") at 331-32.[1] Thus, Itterly admitted to training his employees, exactly as Family Dollar stated. He also trained on other

---

[1] Filed as exhibit A to the Statement of Material Facts Submitted by Defendant in Support of Their Motion for Summary Judgment (ECF No. 20).

2

handbook policies and "reinforce[d]" training on recovery policies. *See id.* at 332-33, 335.

Itterly also claims that "None of the deposition testimony referenced by FD supports" its assertion that he "directed ... employees' work." PRSF ¶ 11(a). Yet, Family Dollar cited and Itterly testified that he "would give register assignments, I would give recovery assignments, I would say, okay, stock the aisle." Tr. at 329-330. This testimony establishes that Itterly directed work.

Perhaps the most egregious of Itterly's unsubstantiated assertions is that the district manager told him "he was not expected to make any decisions regarding store operations." *See* PRSF ¶ 24(e). As the "example" for this, Itterly notes that, when he expressed an opinion about how a counter should be set up, the DM told him "You're not paid to think, you're paid to do." *Id.* This alleged comment does not establish that Itterly was "not expected to make any decisions regarding store operations." As discussed in defendants' motion and *infra* at 4-7, Itterly made numerous management decisions and exercised discretion and judgment in making these decisions. *See, e.g.*, PRSF ¶¶ 30, 31 (Itterly admits using discretion in hiring and marking down merchandise). The relevant test for the executive exemption is the "actual duties" performed by the manager, not stray comments by a supervisor.

Itterly repeatedly contends that there is an "extremely heavy burden" where an employer relies on the executive exemption. Itterly would apparently have the

3

Court ignore the countless federal decisions granting summary judgment on this exemption including the Middle District of North Carolina which in the past three years has granted 35 summary judgment motions in favor of Family Dollar on the identical issue presented here and in the face of the same arguments made here by Itterly. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 515-17 (4th Cir. 2011); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502-06 (6th Cir. 2007); *Soehnle v. Hess Corp.*, 399 Fed. App'x 749, 751-52 (3d Cir. 2010); *Jones v. Va. Oil Co.*, 69 Fed. App'x 633, 637-39 (4th Cir. 2003); *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed. App'x 301, 305-06 (5th Cir. 2008); *McClain v. McDonald's Corp.*, No. 05-1117, 2007 WL 210440, at *9-10 (E.D. Pa. Jan. 25, 2007); *Mims v. Starbucks Corp.*, No. H-05-0791, 2007 WL 10369, at *4-5 (S.D. Tex. Jan. 2, 2007).

### III. MANAGEMENT WAS ITTERLY'S PRIMARY DUTY

#### A. Itterly's Most Important Duties Were Managerial[2]

Itterly argues that he did not perform certain managerial duties as a store manager. The argument ignores the plethora of management responsibilities he did have. For example, Itterly disputes that he played any role in controlling the flow and distribution of merchandise and instead asserts the store was managed by

---

[2] Itterly argues that Family Dollar's reliance on plaintiff's deposition testimony is insufficient to prove primary duty. Not true. *See, e.g., Goff v. Bayada Nurses, Inc.*, 424 F. Supp. 2d 816 (E.D. Pa. 2006) (relying solely upon plaintiff's deposition and résumé for this element).

4

a district manager. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (ECF No. 27) ("Opp.") at 3. Putting aside that he admits on his résumé responsibility for the "overall operation and profitability" of the Allentown store, these assertions do not come close to defeating the exemption. While Itterly alleges that his involvement in personnel decisions was "extremely limited" or not "meaningful" (Opp. at 8, 19), these statements are contradicted by his own testimony, as he concedes that he performed a full range of managerial activities during his brief tenure of 18 weeks as store manager at the Allentown location, including, without limitation:

- Interviewing and hiring cashiers and stockers, and providing recommendations regarding the hiring of assistant store managers. PRSF ¶ 8.
- Training employees on Family Dollar policies. Tr. at 331-32.
- Scheduling employees for work and adjusting the schedule to stay within budget. *Id.* at 271-73, 275-77.
- Directing employees in their work. *Id.* at 330, 380-81.
- Evaluating the work performance of at least one employee (PRSF ¶ 15(a)), and possibly others who worked at the store more than 60 days. Tr. at 376-81.
- Recommending an employee for promotion. *Id.* at 373.
- Disciplining an employee for a rule violation. PRSF ¶ 16.
- Planning work and apportioning it among employees. Tr. at 329-30.
- Ordering supplies (shopping baskets, carts, and bags). *Id.* at 375, 384.
- Working to increase sales. *Id.* at 260.
- Providing for the security of store merchandise. *Id.* at 257-58, 300-01, 365.
- Monitoring employees, truck drivers, and shoppers to prevent theft. *Id.* at 257-58, 260, 300-01.

Courts routinely find that the performance of core managerial duties like "scheduling employees, keeping track of inventory, and assigning employees to particular jobs" are essential activities "in the sense of being most important or critical to the success" of a retail enterprise. *See Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982); *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1145 (3d Cir. 1983). This is true because a retail store "would not function" in the absence of their performance. *See Thomas*, 506 F.3d at 505 (finding hiring, scheduling and training critical to operation of store). Here the management duties that Itterly performed as the highest ranking employee in the Allentown store were essential to the successful operation of the store.

Itterly seeks to minimize the personnel decisions he made or recommended by noting that certain decisions were made only once. Opp. at 8-9. Given that the lawsuit involves only a four month period this is hardly surprising. The essential point is that when these decisions needed to be made, Itterly was the manager who was responsible. A contrary rule would make it nearly impossible for an employer to prove the exemption where the manager was employed for a short period. *See generally Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 530-31 (D. Mass. 2008) (summary judgment against exempt employee and noting that size of department "should be taken into account" in assessing frequency of recommendations made

by the plaintiff because it "is reasonable to assume that generally a smaller police department would have correspondingly fewer new hires, fires, and promotions").

Itterly also argues that, since non-exempt employees sometimes performed some of his managerial tasks, management could not have been his primary duty. *See* Opp. at 9, 16-17. However, a manager's decision to delegate exempt duties does not "minimize the importance of the duties or render them non-exempt." *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1276 (S.D. Fla. 2004), *aff'd*, 140 Fed. App'x 168 (11th Cir. 2005); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001); *Murray v. Stuckeys, Inc.*, 939 F.2d 614, 618-19 (8th Cir. 1991). Whether activities are exempt or not is defined by the regulations and the performance of exempt work by non-exempt employees is irrelevant to this issue. *See* 29 C.F.R. § 541.702 (2006).

B.   <u>Itterly Performed Exempt And Non-Exempt Work Concurrently</u>

Itterly wrongly asserts that "[n]o Circuit courts have found management was a primary duty when the employee spent 80 to 90% of his time performing non-exempt tasks." Opp. at 20. To the contrary, numerous courts have emphasized the "qualitative" nature of the primary duty test. *See, e.g., Soehnle*, 399 Fed. App'x at 751-52 (store manager exempt where 85% of time on cash register); *In re Family Dollar FLSA Litig.*, 637 F.3d at 514-16 (more than 90%); *Baldwin*, 266 F.3d at 1113-14 (90%). The amount of time he spent on non-exempt work is misleading,

because he "performed these tasks in the context of [his] overall responsibility to see that the store operated successfully and profitably." *In re Family Dollar FLSA Litig.*, 637 F.3d at 516; *see* Tr. at 317.

Itterly "was performing management duties whenever []he was in the store, even though []he also devoted most of [his] time to doing the mundane physical activities necessary for it successful operation." *In re Family Dollar FLSA Litig.*, 637 F.3d at 517. For example, once a week, on "truck day," when Itterly spent his work day unloading the delivery truck, he was simultaneously performing exempt and non-exempt tasks. As he explained, Itterly stayed with the truck to see if the driver was "going to slip a box around the side," and further explained that this "was a way of the manager still having control of that situation in the back." Tr. at 300-01. But Itterly's security responsibilities did not end with unloading the truck: they were nearly constant. Thus, on a daily basis, he "watch[ed] the cameras" and "look[] at the videotape" to track theft in the store. *Id.* at 257-58, 365. Itterly also regularly monitored security and "always tr[ied] to increase sales," as shown by his resume which states he was responsible for "profitability" of the store. *Id.* at 260; PRSF ¶ 7.

### C. Itterly Was Relatively Free From Supervision

Itterly argues that various documents show "corporate oversight and micro-management" that restricted him from exercising discretion. Opp. at 21-23. This

argument fails as a matter of law. That Itterly was sometimes required to exercise his discretion and judgment within the parameters set by company policy does not disqualify him from the exemption.[3] *See Donovan*, 675 F.2d at 521-22; *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1301-02 (S.D. Fla. 2006). The law is well established that an exempt employee need not "have unfettered discretion in the performance of his management duties." *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010, 1017 (E.D. Mich. 2005).

Itterly asserts that Family Dollar "dictated to Plaintiff the most fundamental aspects of retail management, including ... scheduling employees ... [and] training employees...." Opp. at 23. His testimony contradicts this assertion. With respect to scheduling, he testified that he was told to "figure it out." Tr. at 271-73, 275-77. Itterly also trained his employees on "various store policies and procedures." *Id.* at 331-32. Regarding Itterly's other arguments regarding the "fundamental aspects of retail management" that were "dictated" to him, nothing in the law requires that an exempt employee make decisions such as what merchandise a store should order. The manager in *Thomas* was found to be exempt without regard to whether she made these sorts of policy decisions. *See generally*, 506 F.3d 496 (6th Cir. 2007).

---

[3] Itterly relies on undated company documents attached as exhibits 7, 8, and 9 to his opposition. Unfortunately these documents were replaced in March 2007 prior to the relevant period herein. Thus, his allegation that this case "is based on much of the same evidence considered by the *Morgan* jury" is incorrect.

9

For the first four of Itterly's 18 weeks as a store manager in Allentown, he testified that there were two district managers temporarily overseeing the store and that they visited "once every three weeks"; in fact, Itterly could not remember their names. Tr. at 242-43, 261. For the remaining 14 weeks, district manager Jeff Van Valkenburgh visited the store once or twice a week, "and as inventory was over, he came a little less." *Id.* at 261-62. Given that the district manager's presence in the store was limited, Itterly was free from supervision and managing the majority of the time, as "there was no one else to do so." *See In re Family Dollar FLSA Litig.*, 637 F.3d at 515, 517.

D.   Itterly Earned Substantially More Than His Subordinates

Itterly's method of calculating his hourly rate is incorrect. An employee's regular hourly rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 CFR § 778.109; *see also Pierce v. Dolgencorp, Inc.*, Nos. 3:09cv079, 4:09cv097, 2011 WL 398366, at *11, n.10 (M.D. Pa. Feb. 23, 2011) (calculating hourly rate by dividing weekly salaries by total number of hours worked); *Plaunt v. Dolgencorp*, Nos. 3:09cv079, 4:09cv097, 2010 WL 5158620, at *12, n.9 (M.D. Pa. Dec. 12, 2010) (same). As explained in the motion, his hourly rate using this formula was $14.65. The rate for the highest paid hourly worker in the store was

$10.00, more than a 46% differential. Such a differential easily meets the Third Circuit standard. *See Soehnle*, 399 Fed. App'x at 752 (affirming exemption where plaintiff made 40% more than hourly employees).

IV.   ITTERLY SUPERVISED TWO FULL-TIME EQUIVALENTS

Itterly asserts that he did not customarily and regularly direct the work of two or more employees because he spent time working alone or with one other person. This is irrelevant. A manager's simultaneous presence with subordinates is not necessary to satisfy this element. *See Baldwin*, 266 F.3d at 1117 (citation omitted) ("continuous simultaneous presence" with assistant managers is not an essential requirement of supervision); U.S. Dep't of Labor, Wage & Hour Div., FLSA 2006-35, Sept. 21, 2006 ("longstanding position of the Wage and Hour Division that a store manager does not have to work at the same time or within the same establishment as his or her subordinate employees to satisfy" requirement that manager "'customarily and regularly direct the work of two or more other employees.'"); *see also Goff*, 424 F. Supp. 2d at 816. Here, Itterly supervised 80 employee hours 100% of the time[4] and supervised his staff even when he was not

---

[4] Itterly suggests that the evidence submitted in support of this point is hearsay. Family Dollar submitted a table showing that the Allentown store reported at least 80 hours of work by hourly employees for 100% of the 18 weeks in which Itterly managed the store. *See* DeBrocq Decl. ¶ 9. DeBrocq authenticated this table in her declaration, explaining that it was created using business records of weekly time-punch information used for payroll purposes for employees in Itterly's store.

11

physically present in the store by leaving notes to assign tasks, following up to ensure these tasks were completed, reviewing film to ensure employees were not stealing, and evaluating employees' performance. *See* DeBrocq Decl. ¶ 9; Tr. at 259-60, 330-31, 380-81; *see Sturm v. TOC Retail, Inc.*, 864 F. Supp. 1346, 1354 (M.D. Ga. 1994).

In sum, on a daily basis Itterly was the highest ranking manager in his store and received a significant salary and other benefits for this role. Itterly performed many of the management duties identified by the regulations and, as is often true in the retail industry and as the regulations recognize, his performance of "nonexempt work" does not "preclude the exemption." 29 C.F.R. ¶ 541.106(b).

|  | Respectfully submitted, |
|---|---|
| Date: September 24, 2012 | By: /s/John A. Ybarra<br>John A. Ybarra<br>Shanthi V. Gaur<br>LITTLER MENDELSON, P.C.<br>321 N. Clark Street, Suite 1000<br>Chicago, Illinois 60654<br>(312) 372-5520 (telephone)<br>(312) 372-7880 (fax)<br>jybarra@littler.com<br>sguar@littler.com |

---

*See id.* These records were produced to plaintiffs at FD-MDL-42019 on October 1, 2008. As such, the table is based on business records and is admissible under Fed. R. Evid. 1006 as a summary.

Joel M. Cohn
(*pro hac vice* to be filed)
AKIN GUMP STRAUSS HAUER &FELD LLP
1333 New Hampshire Ave., N.W.
Washington, DC 20036
(202) 887-4000 (telephone)
(202) 887-4288 (fax)
jcohn@akingump.com


Kristine Grady Derewicz
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
(267) 402-3003 (telephone)
(267) 402-3131 (fax)
kderewicz@littler.com


Attorneys for defendants FAMILY
DOLLAR STORES, INC. and FAMILY
DOLLAR STORES OF
PENNSYLVANIA, INC.

13